IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

DAJUAN S. COLLINS,

                                    Plaintiff,                          REPORT AND
                                                                        RECOMMENDATION
          v.
                                                                        21-cv-237-bbc
ASHLEY N. SURPRISE, JONATHAN J. SYENS,
CPT. SHANE M. HINTON AND
GWEN L. SCHULTZ,
                              Defendants.

_____

## REPORT

Pro se plaintiff and prisoner Dajuan Collins is proceeding on claims that staff at Columbia Correctional Institution used excessive force on him.  Defendants have filed a motion for summary judgment on exhaustion grounds, along with supporting documents, dkts. 20-23 which plaintiff opposed with sworn affidavits, among other things, dkts. 27-30.  More submissions came in from both sides, *see* dkts. 31-33, after which the presiding judge referred defendants' motion to me for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 34.  On April 20, 2021, I held a *Pavey* hearing[1] via Zoom, at which both sides presented witness testimony.  Having reviewed and considered all of the evidence in the record, having heard and seen the witnesses testify, and having made credibility determinations, I am recommending that the court grant defendants' motion.

## Summary of the Hearing Testimony

Dajuan Collins filed one inmate complaint related to his excessive force claim against the defendants in this case:  CCI-2020-8338.  Dkt. 40-3.  His inmate complaint was dated May 10,

_____

[1]*Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)

2020, which would have been timely under the 14-day deadline for filing set forth in Wis. Admin. Code § DOC 310.07(2).  Collins attached documents to his inmate complaint showing that he had attempted to resolve his grievance informally with the unit manager, prison security director, and warden before filing his inmate complaint, as required by prison policy.  *Id.* at 18-22.

At the *Pavey* hearing, Collins testified that he put the inmate complaint outside of his cell on May 10, to be picked up by a correctional officer and delivered to the inmate complaint examiner. Inmate James Washington, an experienced jailhouse lawyer, testified that he had helped Collins prepare his inmate complaint and that he had told Collins repeatedly that he needed to file the complaint within 14 days of the underlying incident.  Inmate Carl Grant testified that he had heard Collins and Washington frequently discussing legal work in May 2020.

The inmate complaint examiner did not receive Collins's inmate complaint until May 12, one day after the 14-day deadline for filing.  As a result, Collins's inmate complaint was rejected as untimely.  Rae Boyer, an inmate complaint examiner at CCI, opined at the hearing that even if Collins had placed his inmate complaint outside of his cell on May 10 for staff to file, the complaint nonetheless was untimely because she did not receive it until after the 14-day deadline had passed.  Boyer acknowledged that the restrictive housing unit, where Collins was housed in May 2020, could be chaotic, but she took the position that it was the inmate's responsibility to ensure that his inmate complaint reached the inmate complaint examiner by the statutory deadline.

Emily Davidson, a corrections complaint examiner for Wisconsin's DOC, testified that an inmate may appeal a complaint that was rejected as untimely to a reviewing authority within 10 days, Wis. Admin. Code § DOC 310.10(10), but that Collins failed to do so. The State introduced evidence from Collins's inmate complaint history report showing that there was no record of Collins having filed an appeal of the rejected complaint.

In response, Collins testified that he actually had filed two appeals of his rejected complaint, both on June 2, 2020, within the 10-day deadline. First, he filed a form titled "Request for Review of Rejected Complaint," Dkt. 29-2, but he mistakenly dated the document July 2, 2020. After he'd placed the misdated document outside his cell door to be picked up, he realized that he'd written the wrong date. So, that same day, he prepared a form titled "Inmate Complaint Appeal," Dkt. 33-2, that he dated June 2, 2020 and put outside his cell door for pickup. Neither document ever was received by a reviewing authority, by the inmate complaint examiner or by the corrections complaint examiner.

Collins testified that he does not know what happened to his appeal forms, but that he had heard about other inmates' exhaustion forms being lost or not delivered to the proper reviewing authority. Inmate Washington testified that he also had heard about other inmates' exhaustion or legal mail going missing, but that he personally had filed 80 to 100 inmate complaints during his incarceration and had not ever had an exhaustion document go missing. Both Boyer, the inmate complaint examiner, and Davidson, the corrections complaint examiner, testified that they were unaware of any substantiated claim involving prison staff losing an inmate's complaint or appeal documents.

3

### Findings of Fact and Analysis

Having seen and heard the witnesses testify, I conclude that defendants have carried their burden to show that Collins did not exhaust his administrative remedies with respect to the claims on which he was granted leave to proceed in this lawsuit.

I credit Collins's testimony that he submitted his initial inmate complaint on May 10, 2020, within the 14-day deadline. Collins's testimony about his initial complaint was bolstered by his exhibits showing that he had followed inmate Washington's instructions to attempt informal resolution of his complaint in a prompt manner, so that he could meet the 14-day deadline. In addition, May 10, 2020, was a Sunday, and it is plausible that, in light of the sometimes chaotic atmosphere of the restrictive housing unit, Collins's inmate complaint was collected on May 10 but not delivered to the inmate complaint examiner until May 12.

But I do not credit Collins's testimony that he submitted a timely appeal of his rejected complaint. *First*, Collins has provided inconsistent testimony regarding the appeal forms he says he submitted. At summary judgment, Collins submitted a sworn declaration stating that he filed a timely appeal of his rejected complaint to the warden on June 2, 2020, and that he submitted the July 2, 2020 appeal document after not receiving a response to his June 2 appeal. Dkt. 33. At the Zoom hearing, however, Collins testified that the declaration was prepared by another inmate and was not accurate. He testified that he actually placed both appeal forms outside of his cell on June 2. He explained that first he placed the form dated July 2 outside his cell for a correctional officer to pick up. Later that same day, he realized that he had written the wrong date on his appeal form, so he placed a second form with the correct date outside his cell.

The inconsistencies between Collins's statements at summary judgment and the hearing undermine his overall credibility. Collins provided no explanation for why he swore to the truth of the statements in the declaration if they were false, beyond stating that another inmate had prepared the declaration. I conclude that Collins changed his story because the statements in his declaration were problematic for him. Specifically, as the state pointed out at the hearing, the "Inmate Complaint Appeal" form that is dated June 2, 2020, is the wrong form to appeal a decision rejecting a complaint as untimely. The "Inmate Complaint Appeal" is the form that would be sent to the corrections complaint examiner in Madison, Wisconsin. Wis. Admin. Code § DOC 310.12. To appeal a complaint rejected as untimely, Collins had to submit a "Request for Review of Rejected Complaint," which is the form he says he submitted with the July 2 date. If Collins did not submit the correct form until July 2, as he stated in his declaration, his appeal was untimely. By changing his story to state that he submitted both forms on June 2, Collins provided himself with wiggle room to contend that he filed the proper appeal form within the applicable deadline, even though he wrote the wrong date on the correct form. This change to Collins's story is too self-serving to be credible.

*Second*, Collins has provided no evidence to support his assertion that correctional officers on the segregation unit lost *both* of his appeal forms. He claimed at the hearing that prison staff had lost inmate mail and exhaustion forms on a number of occasions. But this claim rests on nothing but his own speculation, which is not evidence. *See, e.g., Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)). Jailhouse lawyer Washington testified

that he had successfully filed between 80 and 100 appeals with no losses, and both DOC witnesses testified that they were not aware of any substantiated claims of lost exhaustion materials, ever. This evidence outweighs Collins's self-serving and unsupported claim that staff lost his submissions.

*Third*, there are strong reasons to conclude that Collins created these appeal documents after the fact. Collins's initial inmate complaint and informal resolution attempts were detailed and thorough, likely because jailhouse lawyer Washington was housed next to Collins at the time and helped Collins complete these forms. But Collins's appeal forms are different: they contain only one sentence accusing staff of mishandling his timely complaint. Washington testified at the hearing that he was moved to a cell or unit away from Collins sometime in May. The logical inference is that after Collins lost Washington's assistance navigating the exhaustion process, he was adrift, resulting in him failing to file a proper appeal. When Collins realized that he had failed to appeal his rejected complaint, he fabricated the "July 2" appeal document. Later still, he fabricated the "June 2" appeal document when he realized that a July 2 appeal would have been untimely.

For all of these reasons, I conclude that Collins did not exhaust his administrative remedies according to the procedures set forth in Wis. Admin. Code § DOC ch. 310. He did not take all steps within the administrative process, including filing all necessary appeals within the time constraints established by the DOC. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (prisoners must take all steps within the administrative process in the time and manner established by state procedures). Defendants' motion for summary judgment should be granted.

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the court grant defendants'

Motion for Summary Judgment on Exhaustion Grounds, dkt. 20.


Entered this 26th day of April, 2022.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Madison, Wisconsin 53703

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

April 26, 2022

Dajuan S. Collins
Reg. No. 563315
Columbia Correctional Institution
2925 Columbia Drive
P.O. Box 900
Portage, WI 53901-0900

Brandon Flugaur
Wisconsin Department of Justice
17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857

Re:     Collins v. Suprise, *et al*.
        Case No. 21-cv-237-bbc

Dear Mr. Collins and Attorney Flugaur:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before May 10, 2022, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by May 10, 2022 the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,
/s/
Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures

8

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

      (1) injunctive relief;

      (2) judgment on the pleadings;

      (3) summary judgment;

      (4) to dismiss or quash an indictment or information;

      (5) to suppress evidence in a criminal case;

      (6) to dismiss or to permit maintenance of a class action;

      (7) to dismiss for failure to state a claim upon which relief can be granted;

      (8) to dismiss actions involuntarily; and

      (9) applications for post-trial relief made by individuals convicted of
         criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals. *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).